UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GULF FLEET TIGER ACQUISITION,                CIVIL ACTION
L.L.C.

VERSUS                                       NO. 10-1440 c/w 10-1802

THOMA-SEA SHIP BUILDERS, L.L.C.              SECTION: "G"
ET AL.

## ORDER AND REASONS

Before the Court is Defendant Thomassie Properties, L.L.C.'s ("Defendant") Motion to

Dismiss for Lack of Subject-Matter Jurisdiction.[1]  In this motion, Defendant challenges Gulf Fleet

Tiger Acquisition, L.L.C.'s ("Plaintiff") allegations supporting diversity jurisdiction and the

underlying facts that Plaintiff alleges support the claim that this case is "related to" a matter pending

in bankruptcy in the Western District of Louisiana.  For the following reasons, the Court finds that

diversity jurisdiction has not been established, and the Court will not resolve the issue of whether

the Court has "related to" jurisdiction because it is appropriate for this Court to abstain from this

matter pursuant to 28 U.S.C. § 1334(c)(1), and therefore, the Court dismisses this case without

prejudice.

## I. BACKGROUND

### A.  General Background

On July 31, 2007, Defendant and Gulf Fleet Holdings, Inc. ("GFHI"), an entity not made a

party to this lawsuit,[2] entered into a contract with Defendant to build Hull No. 116, a vessel now

_____

[1] Rec. Doc. 321.

[2] GFHI has filed bankruptcy proceedings in the Western District of Louisiana.  Docket No. 10-50713
(Bankr. W.D. La).

1

known as M/V GULF TIGER.  Pursuant to an addendum dated June 27, 2008, GFHI transferred its rights under the vessel construction contract to Plaintiff.[3]

In its complaint, Plaintiff requests declaratory and injunctive relief and also alleges claims under Louisiana law for breach of contract and violations of the Louisiana Unfair Trade and Consumer Protection Act.[4]  Plaintiff claims that prior to the completion of the vessel, Defendant prematurely conducted dock and sea trials and then demanded $16,128,054.87 within fifteen days of the trials.  Plaintiff contends that the amount demanded exceeds the agreed-upon contract price by over $1 million.

Defendant contends that it conducted the dock and sea trials and demanded payment in accordance with the vessel construction contract.  Specifically, Defendant alleges that it gave Plaintiff advance notice of the scheduled date of the dock and sea trials and that Plaintiff failed to timely pay the full contract price after these trials.  Defendant further alleges that a change order to to the vessel construction contract entered into by Plaintiff and Defendant on August 19, 2009 provided that Defendant would assert its rights as title owner of the vessel upon Plaintiff's failure to make timely payments after the trials.[5]  Thus, Defendant argues that Plaintiff is not entitled to relief in this matter.

## B.  Procedural Background Relating to Subject-Matter Jurisdiction

This litigation was previously comprised of two consolidated civil actions, Civil Action Nos. 10-1440 and 10-1802.  On May 11, 2010, Plaintiff filed its complaint in Civil Action No. 10-1440

---

[3] Rec. Doc. 321-1 at p. 1.

[4] Rec. Doc. 1.

[5] Rec. Doc. 321-1 at p. 2.

against Thoma-Sea Ship Builders, L.L.C. and Thoma-Sea Properties, L.L.C.[6] Initially, the case was allotted to Section "A" of this Court.  The basis alleged for subject-matter jurisdiction in the instant case was diversity.[7]

Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction on June 8, 2010,[8] and Judge Zainey denied Plaintiff's motion on the same day following an emergency status conference.[9]  At that status conference, Defendant raised the issue of whether the Court had diversity jurisdiction, which was the sole jurisdictional basis alleged in the complaint.[10]  Judge Zainey ordered the parties to meet within ten days to determine whether the Court had subject-matter jurisdiction over the matter.[11]

Before the Court could resolve the issue of whether diversity existed, Plaintiff filed Civil Action No. 10-1802 on June 23, 2010,[12] asserting the same claims against Thoma-Sea Ship Builders, L.L.C., Thoma-Sea Properties, L.L.C., and adding as an additional defendant, Gulf Offshore Logistics, L.L.C.[13]  The two complaints in Civil Action Nos. 10-1440 and 10-1802 are substantively

---

[6] *Id*. at pp. 5-6.

[7] *Id.* at pp. 1-2.

[8] Rec. Doc. 7.

[9] Rec. Doc. 8.

[10] *Id.*

[11] *Id*.

[12] Civil Action No.10-1802, Rec. Doc. 1.

[13] Of these entities, Thoma-Sea Ship Properties, L.L.C. was not in existence at the time the instant suit was filed and Thoma-Sea Ship Builders, L.L.C. later merged with Thoma-Sea Boat Builders, L.L.C., creating Thomassie Properties, L.L.C.  As such, Thomassie Properties, L.L.C. is the defendant in this action.  Rec. Doc. 59.  Gulf Offshore Logistics, L.L.C. was subsequently dismissed.  Rec. Doc. 45.  In its complaint, Plaintiff alleged that the members of all defendant limited liability companies were Louisiana citizens, and this allegation has not been challenged at any point in the litigation.

identical, but there is one important difference: Plaintiff's sole member was changed before the second suit was filed.

In the first complaint, Plaintiff's sole member was HIG Gulf Fleet Acquisition, L.L.C., a limited liability company whose membership was not specifically alleged except to state, in a conclusory manner, that its membership was not comprised of any Louisiana citizen.  In the second complaint, Plaintiff's sole member was Gulf Fleet Tiger Holdings, Inc., an alleged Delaware corporation with its principal place of business in Miami, Florida.

In the second complaint, Plaintiff further alleged that the Court has jurisdiction because the claims here are allegedly "related to" a matter in bankruptcy pursuant to 28 U.S.C. § 1334(b). Specifically, Plaintiff alleged that this case "related to" the bankruptcy proceedings of GFHI in the Western District of Louisiana.[14]

On June 28, 2010, Section "A" of this Court issued an order consolidating Civil Action Nos. 10-1440 and 10-1802.[15]  On July 27, 2010, Plaintiff voluntarily dismissed the first action, Civil Action No. 10-1440.[16]  On August 17, 2010, Defendant filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction in Civil Action No. 10-1802, challenging Plaintiff's allegations of diversity and "related to" jurisdiction.[17]  Finding jurisdiction pursuant to 28 U.S.C. § 1334(b), the bankruptcy jurisdictional statute, Judge Zainey did not rule on whether diversity jurisdiction was also present.[18]

---

[14] Docket No. 10-50713 (Bankr. W.D. La).

[15] Rec. Doc. 9.

[16] Rec. Doc. 21.

[17] Rec. Doc. 31.

[18] *Id.*

Then, on September 29, 2011, Judge Zainey held a Pre-Trial Conference with the parties in advance of an October 11, 2011 trial date.[19]  In the Proposed Pre-Trial Order submitted in advance of the Pre-Trial Conference, Defendant again questioned the existence of subject-matter jurisdiction based on information obtained during the discovery process after Judge Zainey's ruling on the initial Motion to Dismiss.[20]  After reviewing Defendant's contentions in the Pre-Trial Order, Judge Zainey continued the trial and ordered Defendant to file, by October 28, 2011, a new motion challenging subject-matter jurisdiction based on the newly discovered information, so as to ensure that the Court had subject-matter jurisdiction over the case before proceeding to trial.[21]

On October 7, 2011, this case was transferred to Section "G" of this Court.[22]  Subsequently, on October 28, 2011, Defendant filed the instant Motion to Dismiss for Lack of Subject-Matter Jurisdiction, as directed by Judge Zainey.[23]  On November 15, 2011, Plaintiff filed its opposition to Defendant's motion.[24]  On November 23, 2011, Defendant filed a reply memorandum in support of its motion.[25]  A hearing was held on the Motion to Dismiss for Lack of Subject-Matter Jurisdiction

---

[19] Rec. Doc. 305.

[20] Rec. Doc. 300.

[21] Rec. Doc. 305.

[22] Rec. Doc. 310.

[23] Rec. Doc. 321.

[24] Rec. Doc. 332.

[25] Rec. Doc. 344.

5

on November 23, 2011.[26]  The Court granted leave for both parties to file supplemental memoranda after the hearing.[27]

## II.  LAW AND ANALYSIS

### A.  *Law of the Case*

Plaintiff contends that the Court should not revisit its previous ruling on subject-matter jurisdiction pursuant to the law of the case doctrine.  Typically, an issue addressed by a court becomes *stare decisis* for subsequent proceedings in the same case[28]; however, this doctrine is not mandatory,[29] and under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[30] Therefore, the Court is not prohibited from considering this matter pursuant to the law of the case doctrine.

---

[26] Rec. Doc. 345.

[27] Rec Docs. 351, 352.  [Plaintiff requested an additional hearing on March 15, 2012 to present further evidence; that request was denied.  The additional evidence listed in the memorandum in support of the motion addressed the issue of "related to" jurisdiction, not diversity jurisdiction.]

[28] *See Morrow v. Dillard*, 580 F.2d 1284, 1289 (5th Cir. 1978).  *See also Verdin v. Shell Offshore, Inc.*, No. 93-3795, 1996 WL 67660, at *2 (E.D. La. Feb. 15, 1996) (Berrigan, J.).

[29] *Perillo v. Johnson*, 205 F.3d 775, 780-81 (5th Cir. 2000) ("The law of the case doctrine is a matter of judicial discretion rather than judicial power when a court is reviewing its own prior decision."). *See also* 18 Lawrence B. Solum, *Moore's Federal Practice - Civil* §134.22 (Matthew Bender 3d ed. 2012).

[30] *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1991).

## B.  Standard of Review on Motion for Reconsideration

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[31] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[32]  Rules 59 and 60, however, apply only to final judgments.[33]  Therefore, when a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls.[34]  The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[35]

---

[31] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[32] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-*4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[33] Rule 59 concerns motions to "alter or amend a judgment" whereas Rule 60 can provide relief from "a *final* judgment, order, or proceeding."  Fed. R. Civ. P. 60(b) (emphasis added).  The Advisory Committee Notes of 1946 state that "[t]he addition of the qualifying word 'final' emphasizes the character of judgement, orders or proceedings from which *Rule 60(b)* affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  Fed. R. Civ. P. 60(b) (1946 Advisory Committee Notes).  *See also Helena Labs. Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538 (E.D. Tex. 2007) (motion was improperly filed under Rule 59(e) when there existed no final judgment that had been entered).  *See also Lambert v. McMahon*, No. 06-10679, 2007 U.S. App. LEXIS 5220 (5th Cir. Mar. 6, 2007) (where there was no entry of final judgment, requests could not be considered under Rule 60(b)); *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 37 (1st Cir. 1985) (finding that a district court's decision to dismiss fewer than all counts of a complaint did not constitute a basis for any final judgment, such that it was error for the district court to have applied a Rule 60(b) standard to a motion seeking reconsideration of the dismissal).

[34] Fed. R. Civ. P. 54(b).  *See also Helena Labs,* 483 F. Supp. 2d at 538 (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case).

[35] Fed. R. Civ. P. 54(b).

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[36]  However, this broad discretion[37] must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[38]  Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion.[39]

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[40]  A Rule 59(e) motion "calls into question the correctness of a judgment,"[41] and courts have considerable discretion in deciding whether to grant such a motion.[42]  In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[43]  Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

---

[36] *Melancon*, 659 F.2d at 553 (5th Cir. 1991).

[37] *See Calpetco 1981 v. Marshall Explor., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

[38] *See, e.g.,* 18B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4478.1 (2d ed. 2002).

[39] *Martin v. H.M.B. Constr. Co.,* 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted).  *See also Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996).

[40] *See, e.g., Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[41] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

[42] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

[43] *Id.* at 355-56.

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[44]

Although Rules 59 and 60 set forth specific time frames during which reconsideration may be sought,[45] Rule 54 sets forth no such limitation.[46]  However, importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments.[47]  Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[48]

The Court finds it appropriate to exercise its broad discretion and revisit the issue of subject-matter jurisdiction in this case for the following reasons.  First, Judge Zainey, on the eve of trial, continued the trial in this matter and ordered Defendant to submit a subsequent motion to dismiss upon Defendant advising the Court of newly discovered evidence that might bear on the issue.[49]  Second, Judge Zainey's finding of  "related to" jurisdiction in his initial ruling may have been

---

[44] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[45] Fed R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

[46] Fed. R. Civ. P. 54(b) (stating that the order "may be revised at any time" before entry of final judgment). The only limitation imposed on Rule 54(b) reconsideration is if the court issues an order expressly stating that there is "no just reason for delay," in which case the order becomes a final, appealable judgment.  *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth.*, 925 F.2d 812, 815 (5th Cir. 1991).

[47] *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

[48] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[49] Rec. Doc. 305.

influenced by the fact that Plaintiff and GFHI were "amicable related entities," a novel basis of jurisdiction.  Moreover, the new evidence obtained through discovery appears to show that the facts supporting Judge Zainey's conclusion may have been inaccurate.

Courts have an obligation to ensure that subject-matter jurisdiction exists and that the exercise of that jurisdiction is appropriate before hearing a case,[50] and, as such, subject-matter jurisdiction may be raised at any time by the parties or by the Court itself.[51]  Clearly, Judge Zainey still had reservations regarding whether this Court had jurisdiction before he transferred the matter to Section "G," given that he ordered Defendant to file, if appropriate, another Motion to Dismiss for Lack of Subject-Matter Jurisdiction.  Additionally, after Judge Zainey determined that "related to" jurisdiction under Section 1334(b) existed, Judge Zainey did not consider whether permissive abstention under Section 1334(c)(1) was appropriate.  For these reasons, the Court finds it appropriate to address subject-matter jurisdiction at this time, as the circumstances fit the narrow purpose for which reconsideration should be entertained by this Court.

### C. Subject-Matter Jurisdiction

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim."[52]  Federal courts are considered courts of limited

---

[50] *Arena v. Graybar Elec. Co.*, 2012 U.S. App. LEXIS 1341 (5th Cir. Jan. 25, 2012) ("Precedent puts a great responsibility on all federal courts to consider reasonable challenges to jurisdiction before reaching the merits of litigants' substantive claims.").

[51] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment").

[52] *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted).

jurisdiction and therefore, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims.[53]   Accordingly, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence.[54]

The standard of review for a 12(b)(1) motion to dismiss turns on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiff's complaint.[55]   A defendant makes a "facial" jurisdictional attack by merely filing a motion under Rule 12(b)(1) challenging the court's jurisdiction.[56]   Under a facial attack, the court is only required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true.[57]   A "factual" attack, however, is made by providing affidavits, testimony and other evidentiary materials challenging the court's jurisdiction.[58]   When a "factual" jurisdictional attack is made by a defendant, the plaintiff must submit facts in support of the court's jurisdiction, and he bears the burden of proving by a preponderance of the evidence that the court, in fact, has subject-matter jurisdiction.[59]

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, "a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[60]   In ruling,

---

[53] *See, e.g., Stockman v. Fed. Election Comm'n.*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).

[54] *Id.*

[55] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

the court may rely upon any of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[61]

1. *Diversity Jurisdiction*

   a. *Applicable Law*

Plaintiff contends that this Court has jurisdiction over its claims on the basis of diversity jurisdiction.  Diversity jurisdiction exists when the plaintiffs and defendants are completely diverse at the time of filing and the amount in controversy exceeds $75,000.[62]  "When jurisdiction depends on citizenship, citizenship should be distinctly and affirmatively alleged."[63]  This burden rests on the party invoking the Court's jurisdiction.[64]  "Failure adequately to allege the basis for diversity jurisdiction mandates dismissal."[65]  The basis of jurisdiction "cannot be established argumentatively or by mere inference."[66]

A corporation is a citizen of both the state in which it is incorporated and the state where it has its principal place of business.[67]   The citizenship of a limited liability company is determined

---

[61] *Id*. at 181 n.2  (citing *Williamson*, 645 F.2d at 413).

[62] 28 U.S.C. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

[63] *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991) (internal quotations omitted).

[64] *Harvey Constr. Co. v. Robertson-Ceco Corp.*, 10 F.3d 300, 303 (5th Cir. 1994) (internal citations omitted).

[65] *Stafford*, 945 F.2d at 804-05 (internal citations omitted).

[66] *Illinois C. G. R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

[67] 28 U.S.C. § 1332(c).

by the citizenship of all of its members.[68]

There are, however, limits to diversity jurisdiction even when the plaintiffs and defendants are completely diverse at the time a complaint is filed.  Specifically, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."[69]   When a party files a motion to dismiss alleging a factual attack that jurisdiction has been established in violation of Section 1359, the party seeking to invoke federal jurisdiction carries the burden to prove its existence by a preponderance of the evidence.[70]

The Fifth Circuit has noted that "[Section 1359] has generally been restricted to circumstances involving the assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction."[71]   Despite this cautionary language, neither the Supreme Court nor the Fifth Circuit has conclusively held that Section 1359 is only violated in situations of assignment.  In fact, the plain language of Section 1359 suggests that it is not meant to be limited exclusively to situations of assignment.[72]  Moreover, the Fifth Circuit has explained that "Section 1359 is designed to prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction acquire a spurious status that would allow them to invoke the limited jurisdiction of

---

[68] *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

[69] 28 U.S.C. § 1359.

[70] *See Harvey Constr. Co.*, 10 F.3d at 303.  *See also Paterson*, 644 F.2d at 523; 13F Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3637 (3d ed. 2011).

[71] *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir. 2000) (citing *Kramer v. Carribean Mills, Inc.*, 394 U.S. 823 (1969)).

[72] 28 U.S.C. § 1359 ("[a] district court shall not have jurisdiction . . . [when] any party, by assignment *or otherwise*, has been improperly or collusively made or joined to invoke the jurisdiction of such court") (emphasis added).

the federal courts."[73]  The Court stated further that "[t]he purpose of the statute is to prevent the manipulation of jurisdictional facts where none existed before – for example through collusive assignments from a non-diverse party."[74]  Thus, while collusive assignments may be the most common violation of Section 1359, the Fifth Circuit has not expressly limited Section 1359 to collusive assignments, and at least one court within this District has held that Section 1359 applies to situations other than assignment.[75]

Other courts outside the Fifth Circuit have addressed the applicability of Section 1359 in circumstances similar to the situation in this case.[76]  In *Toste Farm v. Hadbury,*[77] the First Circuit addressed whether a plaintiff corporation that merges into another corporation for the purpose of creating diversity violates Section 1359.  In that case, plaintiffs, one of whom was a Rhode Island corporation, filed suit under the diversity statute against a variety of defendants, including at least one Rhode Island citizen.[78]  Realizing that the parties were not completely diverse, the plaintiffs voluntarily dismissed the suit.[79]  After dismissing the suit, the Rhode Island corporation merged into

---

[73] *Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990).

[74] *Id.*

[75] *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 934 F. Supp. 209, 212 (E.D. La. 1996) (Mentz, J.) ("Here, the settlement rather than the assignment is what is at issue . . . .  The assignment has no bearing on the creation of jurisdiction in this case. By its own terms, § 1359 applies to situations of collusive jurisdiction created 'by assignment or otherwise.' Therefore, § 1359 clearly applies to any agreement or transaction devised to manufacture jurisdiction, including settlement agreements.).

[76] *See Toste Farm Corp. v. Hadbury*, 70 F.3d 640, 641-42 (1st Cir. 1995); *see also Castillo Grand LLC v. Sheraton Oper. Corp.*, No. 09-CV-7197, 2009 WL 4667104 (S.D.N.Y. Dec. 9, 2009).

[77] 70 F.3d 640.

[78] *Id.* at 642.

[79] *Id.*

a New York corporation which was created earlier that year.[80]  The New York corporation received all of the Rhode Island corporation's assets, and the Rhode Island corporation dissolved.[81]  The plaintiffs then filed a second suit in federal court with the newly-diverse parties.[82]  The plaintiffs admitted that one purpose of the merger was to manufacture diversity.[83]  Both the district court and the First Circuit held that this corporate restructuring ran afoul of Section 1359 because one purpose was to manufacture diversity, even though it was not the only purpose for the restructuring.[84]

Similarly, the Court finds instructive the reasoning in an opinion rendered in a case decided in the Southern District of New York.[85]  There, the plaintiff, a limited liability company, filed suit against a New York corporation.[86]  Defendants filed a motion to dismiss after extensive discovery and three years of proceedings, alleging that two indirect, part-owners of the plaintiff were citizens of New York.[87]  The plaintiff voluntarily dismissed the suit.[88]  Following the dismissal, the plaintiff reorganized itself to eliminate the non-diverse parties and filed a second suit.[89]  The plaintiff argued that this reorganization did not run afoul of Section 1359 because Section 1359 traditionally applied

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.* ("Plaintiffs concede that one purpose of creating TFC and dissolving TFCI was to manufacture diversity in this action . . . .").

[84] *Id.* at 644.

[85] *Castillo Grand LLC,* 2009 WL 4667104, at *1.

[86] *Id.* at *1.

[87] *Id.*

[88] *Id.* at *2.

[89] *Id.*

when a non-diverse person who is the real party in interest assigns his claims to a diverse individual.[90] The plaintiff also argued that the true purpose of the reorganization—avoiding wasting three years of litigation—was a proper purpose.  The court was not convinced by either argument.  The court held that because the plaintiff admittedly reorganized itself to create diversity, diversity jurisdiction was defeated by Section 1359.[91]

### b. Analysis

Defendant contends that Plaintiff underwent corporate restructuring in order to invoke diversity jurisdiction in violation of 28 U.S.C. § 1359.  In support of this argument, Defendant points to the fact that when Plaintiff filed the first suit, Civil Action No. 10-1440, the sole member of Plaintiff was HIG Gulf Fleet Acquisition, L.L.C., an entity whose citizenship has never been affirmatively alleged.  Defendant then notes that when Plaintiff filed Civil Action 10-1802, Plaintiff's sole member had changed to Gulf Fleet Tiger Holdings, Inc., a Delaware corporation with its principal place of business in Florida.[92]  Moreover, Defendant directs the Court to an affidavit submitted by Richard Siegel, general counsel for HIG Capital, attached by Plaintiff to its opposition to Defendant's original motion to dismiss[93] to show that Gulf Fleet Tiger Holdings, Inc. was created to manufacture diversity jurisdiction.  In his affidavit, Siegel states that first, HIG Gulf Fleet Acquisition, L.L.C. moved its membership to Gulf Fleet Tiger Holdings, L.L.C.[94]  Subsequently,

---

[90] *Id.* at *3.

[91] *Id.* at *3-*7.

[92] Rec. Doc. 321-1 at p. 5.

[93] Rec. Doc. 41-1.

[94] *Id.* at ¶ 7.

Gulf Fleet Tiger Holdings, L.L.C. was converted to Gulf Fleet Tiger Holdings, Inc.[95]  Siegel explains

the rationale for converting Gulf Fleet Tiger Holdings, L.L.C. to Gulf Fleet Tiger Holdings, Inc. as

follows:

> [P]rior to a new complaint being filed by Gulf Fleet Tiger Acquisition, L.L.C. against Thoma-Sea, I recognized that the diversity of citizenship question might be complicated due to the company's ownership tiers of limited liability companies and partnerships, and I sought to avoid a costly dispute over jurisdiction issues with Thoma-Sea.  To that end, on June 18, 2010, I caused [Gulf Fleet Tiger Holdings, L.L.C.] to be converted from a Delaware limited liability company to a Delaware corporation.[96]

Accordingly, Defendant believes that this shows that Gulf Fleet Tiger Holdings, L.L.C. was

converted to Gulf Fleet Tiger Holdings, Inc. to ensure that the parties to the second suit were

completely diverse by improperly or collusively creating diversity.

In its opposition, Plaintiff also relies on the Siegel affidavit.  Specifically, Plaintiff contends

that HIG Gulf Fleet Acquisitions, L.L.C. contributed its membership to Gulf Fleet Tiger Holdings,

L.L.C. to obtain financing to purchase the vessel and that, therefore, its membership was not altered

to create diversity. However, Plaintiff presents no reason for the second conversion, from Gulf Fleet

Tiger Holdings, L.L.C. to Gulf Fleet Holdings, Inc., other than the expressed desire to avoid

litigation over the diversity issue.  That is, Plaintiff presents no independent business reason for this

second change.

The Court is not convinced by Plaintiff's argument because it falls short of a full explanation.

Taking all of Plaintiff's allegations as true and as the Siegel affidavit states, after HIG Gulf Fleet

Acquisition, L.L.C. became Gulf Fleet Tiger Holdings, L.L.C. to obtain financing of the vessel, Gulf

---

[95] *Id.* at ¶ 9.

[96] *Id.*

Fleet Tiger Holding L.L.C. was converted to Gulf Fleet Holdings, Inc., a Delaware Corporation, allegedly to avoid costly litigation over diversity jurisdiction. Thus, regardless of the reasons that may have motivated the first change in Plaintiff's entity status, Plaintiff has not contended that the second change of its membership was done for purposes other than ensuring diversity in this case. Therefore, one purpose of the chain of reorganization was to affect diversity jurisdiction. At least one other court has found such action to constitute the collusive creation of diversity jurisdiction.

Further, Plaintiff has yet to disclose the citizenship of its original L.L.C., even though it states in its opposition that reorganization was not necessary to create diversity because diversity already existed. In fact, in the hearing on this matter, in response to the Court's inquiry regarding the citizenship of the original L.L.C., counsel for Plaintiff stated:

> I'm not sure it's knowable. It would be very difficult dealing with the investors in a fund. It would be very difficult to close down. *It is simply not necessary in this case. The basis of subject matter jurisdiction is "related to."*[97]

Here, Plaintiff bears the burden of affirmatively establishing that the Court, in fact, has subject-matter jurisdiction, without relying on mere argument or reference. The parties were provided an opportunity for discovery and a hearing was held with no time limits imposed. Moreover, the Court allowed the parties an opportunity to file supplemental memoranda after the hearing, but Plaintiff has never presented evidence to indicate that the parties were completely diverse at the outset of the original suit, and the Court has determined that later changes to Plaintiff's citizenship were improper or collusive in violation of Section 1359. Therefore, assuming the facts

---

[97] Hearing Transcript, p. 19, lines 4-8 (emphasis added).

are as Plaintiff contends, there are no disputed material facts at issue, and so the Court finds that Plaintiff has not met its burden of establishing diversity jurisdiction.

### 2. *"Related To" Jurisdiction Under Section 1334(b)*

#### a. *Applicable Law*

Under 28 U.S.C. § 1334(b), district courts possess "original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11."[98]  In the Fifth Circuit, the "related to" jurisdictional grant is given a broad interpretation: the test for whether a proceeding properly invokes "related to" jurisdiction is whether the outcome of the proceeding could conceivably affect the estate being administered in bankruptcy.[99]  However, although the "related to" jurisdictional grant has been given a broad interpretation, it is not unlimited.[100]

#### b. *Analysis*

Judge Zainey, in his previous ruling, noted that GFHI had a state law lien on the M/V Gulf Tiger, and (he assumed) that such a lien was a significant asset to the bankruptcy case.  He also noted that:

---

[98] 28 U.S.C. § 1334(b).

[99] *Randall & Blake Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585 (5th Cir. 1999) (quoting *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999)).

[100] *See Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009) ("The bankruptcy court's 'related-to' jurisdiction is not limitless.") (citing *Celotex v. Edwards*, 514 U.S. 300, 308 (1995)); *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (explaining that "related-to" jurisdiction is often lacking in complaints where the Debtor is not a party).

> The case before this Court involves *inter alia* the question of which party gets the vessel upon which the asset rests and for what price. The debtor is not one of the parties to this litigation and the vessel is not a party to either action.  Therefore, regardless of how the Court ultimately rules in this case, a third-party is going to own the vessel and the debtor will be required to enforce its lien rights against a third party.[101]

Judge Zainey then analyzed the issue as follows:

> But the question with "related to" jurisdiction is whether the outcome in this case could *conceivably* affect the estate being administered in bankruptcy, and on this point the Court need not be *certain*.[102]

Judge Zainey went on to note Plaintiff's position that "if [Plaintiff] prevails in this litigation the debtor will have an easier time of enforcing its lien rights because the vessel will be in the hands of an 'amicable related entity.'"[103] Although Judge Zainey made a point to state that this fact "cannot and will not affect the outcome of this case," he further noted, "it cannot be gainsaid that costs to the estate of enforcing the lien against a wholly-unrelated third party will surely be significantly greater both in terms of expenses and attorney's fees."[104]  Thus, Judge Zainey concluded that he could not "agree with Defendant's contention that there is no conceivable way that the outcome of this case can affect the bankruptcy estate."[105]  Despite this, as noted previously, in the pretrial order and subsequent pre-trial conference in this matter, Defendant again raised the issue of subject-matter

---

[101] Rec. Doc. 50 at p. 6.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.* at p. 7.

jurisdiction, noting newly discovered evidence, first, that Plaintiff never had a valid lien on the vessel and, second, that Plaintiff and GFHI, the debtor, were not "amicable."[106]

In response to Defendant's recently filed motion to dismiss on this issue, Plaintiff argues that neither the validity of the lien nor whether the entities were amicably related matters because, at the time suit was filed, GFHI had an option to repurchase the vessel construction contract at issue in this case until December 31, 2010.  Plaintiff argues that, therefore, even if Defendant is correct in its new evidence, the pending matter still relates to GFHI's bankruptcy in the Western District because the debtor in the bankruptcy matter had an option on the contract at issue in this case.[107]

Considering Plaintiff's initial argument concerning the alleged lien, regardless of how the Court ultimately ruled, the debtor would be required to enforce its lien rights against a third party; and similarly, regarding the option on the contract at issue here, had the debtor exercised its option to repurchase the vessel construction contract, it does not appear the outcome in this case would have any effect on the debtor's exercise of its option.[108]  Nevertheless, the Court need not resolve the issue of "related to" jurisdiction[109] because even assuming "related to" jurisdiction exists, for the reasons explained below, permissive abstention is proper under 28 U.S.C. § 1334(c)(1).

---

[106] Included among the evidence submitted to the Court by Defendant is an affidavit of Alan Goodman, the liquidating trustee of Gulf Fleet Liquidating Trust, the successor to GFHI.  In his affidavit, Goodman states that GFHI has not had any valid maritime liens, state law privileges, or any other in rem claims on the vessel, on or since it filed for bankruptcy.  Additionally, Goodman states that since GFHI filed for bankruptcy, it has had "materially adverse interests" to Plaintiff.  Rec. 344-3 at pp. 1-2.

[107] It should be noted that neither the lien relied upon in plaintiff's first opposition nor the option mentioned in its current opposition were listed on the schedule of assets that GFHI filed with the bankruptcy court.  Rec. Doc. 344-5.

[108] In fact, we now know the lien proved invalid and the option was never exercised.  However, "related to" jurisdiction is determined at the time of filing.  *In re Canion*, 196 F.3d at 587 n. 29.

[109] *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 697 (N.D. Miss. 2004) ("In the court's view, the issue of whether it has 'related to' jurisdiction in this case is largely immaterial, given that discretionary abstention . . . [is] appropriate, even assuming that the court has 'related to' jurisdiction.") (internal citation omitted).

*3. Permissive Abstention Under Section 1334(c)(1)*

*a. Applicable Law*

When a court has jurisdiction over a proceeding pursuant to 28 U.S.C. § 1334(b), it may elect to abstain from hearing that proceeding pursuant to 28 U.S.C. § 1334(c)(1), which states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

"[C]omity requires federal respect for state courts' competency to conduct proceedings and enter judgments."[110]  In interpreting whether this standard is met, courts look to the factors that govern mandatory abstention under 28 U.S.C. § 1334(c)(2), and the Court may permissibly abstain from a case where a party is asserting "related to" jurisdiction and some of the requirements for mandatory abstention are met.[111]  Pursuant to 28 U.S.C. § 1334(c)(2), the requirements for mandatory abstention are:

> "(1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11 but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court."[112]

---

[110] *Wells Fargo Bank, N.A. v. Flash VOS, Inc.*, No. 05-2660, 2006 U.S. Dist. LEXIS 44033, at *12 (E.D. La. June 28, 2006) (Feldman, J.) (quoting *KSJ Dev. Co. of La. v. Lambert*, 223 B.R. 677, 681 (E.D. La. 1998)).

[111] *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206-07 (5th Cir. 1996) ("Nothing [] prevents a court from permissively abstaining under [Section] 1334(c)(1) where some, but not all, of the requirements for mandatory abstention are met."); *Ford Motor Credit Co. v. AA Plumbing, Inc.*, No. 00-1561, 2000 U.S. Dist. LEXIS 11388, at *9 (E.D. La. Aug, 2, 2000) (Vance, C.J.).

[112] *Schuster v. Mims (In re Rupp & Bowman Co.)*, 109 F.3d 237, 239 (5th Cir. 1997) (citing *Gober*, 100 F.3d at 1206).

Additionally, permissive abstention may be appropriate when the plaintiff's claims "hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy law."[113] Further, the Court notes that "[p]ermissive abstention under [Section] 1334(c)(1) may be raised by the court *sua sponte*."[114]   A district court's decision to permissively abstain is not appealable.[115]

### b. Analysis

Although Defendant has not filed a motion arguing that Section 1334(c)(2) compels mandatory abstention, the Court finds that because most of the requirements for mandatory abstention are met, permissive abstention is proper.   Moreover and importantly, Plaintiff's claims "hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy law."[116]

First, there is no independent basis for jurisdiction other than Section 1334(b), which provides jurisdiction over proceedings "related to" bankruptcy.[117] Although "related to" jurisdiction has not been clearly established, it is clear that no other basis of jurisdiction exists here.[118]   The only

---

[113] *Gober*, 100 F.3d at 1207.

[114] *Id.* at 1206 n.10 (internal citations omitted).

[115] 28 U.S.C. § 1334(d); *Bristol Res. 1994 Acquistion Ltd. P'ship v. NI Fuel Co.* (*In re Bristol Res. 1994 Acquisition Ltd. P'ship*), 333 F.3d 608, 611 (5th Cir. 2003).

[116] *Gober*, 100 F.3d at 1207.

[117] Again, the Court notes that it is tenuous whether such "related to" jurisdiction even exists here because it is not obvious to this Court that this proceeding can accurately be characterized as "related to" the bankruptcy proceeding. There exists a close question whether allowing "related to" jurisdiction here would stretch too far this grant.  Nevertheless, this Court need not be certain.

[118] *See Ford Motor Credit Co.*, 2000 U.S. Dist. LEXIS, at *9 (finding that no independent basis for jurisdiction existed after determining that diversity jurisdiction was not present, the only other alleged basis of jurisdiction).

23

other basis of jurisdiction alleged was diversity, which this Court has found to be lacking.  Next, the claims pending here are non-core.[119]  Further, there is no reason to believe that this action could not be adjudicated timely in state court should the Plaintiff file an action there,[120] although no such action has yet been filed.  Additionally, Section 1334(c)(1) specifically states that the district court may abstain "in the interest of comity with State courts or respect for State law."[121]  Considering that Plaintiff's claims in this action are governed exclusively by state law and invoke no substantive right created by federal law or federal bankruptcy law, respect for state law and the interest of comity with state courts heavily favor abstention in this case pursuant to Section 1334(c)(1).

Thus, the Court finds that even if this Court has jurisdiction under Section 1334(b), permissive abstention is proper under Section 1334(c)(1) because most of the elements necessary for mandatory abstention are present here[122] and respect for state law heavily favors abstention in this case.  Further, the Court also notes that, by abstaining, the issue of subject-matter jurisdiction may be brought to a close so that the parties may proceed with the merits of this case—albeit in state court.

---

[119] *See* 28 U.S.C. § 157(b)(2).  *See also Morrison*, 555 F.3d at 479 ("'Core' proceedings are those that 'invoke [ ] a substantive right provided by title 11' or 'could arise only in the context of a bankruptcy case.'") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[120] In Louisiana, the prescriptive period for a breach of contract claim is ten years, running from the date of the breach, and therefore, Plaintiff can timely file its claim in state court.  *Hawthorne Land. Co. v. Occidental Chem. Corp*, 431 F.3d 221, 228 (5th Cir. 2005) (citing La. Civ. C. art. 3499).  Further, regarding Plaintiff's Louisiana Unfair Trade and Consumer Protection Act Claim, prescription is interrupted when action is commenced in a court of competent jurisdiction and venue and when an action is commenced in an incompetent court if the defendant is served by process within the prescriptive period. La. Civ. C. art. 3462.  Moreover, the record reflects that jurisdiction has been a disputed issue from this case's inception and that Plaintiff knew of the risks associated with not simultaneously filing suit in state court.

[121] 28 U.S.C. 1334(c)(1).

[122] The only element missing is the current existence of an action in state court.

24

## III.  CONCLUSION

In this case, initially two bases for jurisdiction were alleged: diversity and "related to" jurisdiction.   Regarding diversity, Plaintiff bore the burden of demonstrating diversity and specifically that it did not, by assignment or otherwise, improperly or collusively invoke the jurisdiction of this Court.  Plaintiff has not met its burden.  Accordingly, the Court finds diversity jurisdiction has not been established in this matter.  Regarding "related to" jurisdiction, the Court need not decide definitely whether this matter can properly be deemed "related to" the bankruptcy proceeding because the Court finds permissive abstention is warranted pursuant to 28 U.S.C. § 1334(c)(1).  Accordingly, for the reasons set forth above,

**IT IS ORDERED** that this case is **DISMISSED** without prejudice to bring this action in another forum.

New Orleans, Louisiana, this  5th  day of April, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**